IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>BRYCE S. CARTER,<br><br>Defendant. | Case No. 1:25-po-492<br><br>The Honorable John F. Anderson<br><br>Sentencing Date: October 7, 2025 |

## UNITED STATES OF AMERICA'S POSITION ON SENTENCING

Every day, approximately 34 people in the United States die in drunk-driving crashes.[1] Put another way, one person dies from a drunk-driving crash every forty-two minutes. Of course, each one of these deaths is preventable – an intoxicated person can choose to get a ride home from a friend, call a taxi or rideshare, or wait until he becomes sober before getting behind the wheel. On February 27, 2025, however, Defendant Bryce S. Carter failed to take any of these preventative steps. Instead, he did what he has done on several prior occasions – he drove under the influence. For this offense, and the others he committed that night, which form another link in the Defendant's long chain of impaired driving incidents, the United States respectfully recommends a sentence of 90 days' imprisonment, five years of probation with the special conditions described below, and a $2,000 fine, which is sufficient, but not greater than necessary, to achieve the goals of sentencing and to keep the community safe.

---

[1] National Highway Traffic Safety Administration, Department of Transportation, "Drunk Driving," https://www.nhtsa.gov/risky-driving/drunk-driving (last accessed September 29, 2025).

## I.    BACKGROUND

### A.  Factual Background

The Defendant is a 36-year-old man from Washington, D.C. who has driven while intoxicated for at least ten years.[2] He was caught driving under the influence for the first time on May 31, 2015. Presentence Investigation Report (hereinafter, "PSR") ¶ 20, at 5.   Early that morning, a Honolulu police officer witnessed the Defendant back his vehicle right into another car. Even after the collision, the Defendant kept his foot on the gas. *Id.* at 6.   When the officer approached the Defendant, he instructed the Defendant to press the brakes. *Id.*   The Defendant complied, then stumbled out of the car. *Id.*   His eyes were red and bloodshot, his speech was slurred and incoherent, and he begged the officers to let him go.   The Defendant made statements such as "I know I just hit that car," "'I am perfectly willing to take a taxi home," and "my insurance will cover the damage." *Id*.

The Defendant's physical signs of intoxication and conduct led the officer to arrest him for operating a vehicle under the influence of an intoxicant subsequent to a motor vehicle collision,[3] and the Defendant was later convicted for driving while intoxicated, first offense. ¶ 20.   The Defendant's commanding officer in the Army described his drunk driving as "reprehensible behavior," and relieved the Defendant of his duties as an executive officer because the Defendant "failed to abide by the Army Values by driving under the influence of alcohol." PSR ¶ 46.   And while the Defendant received an "Honorable" discharge from the Army, the reason provided for his separation was "unacceptable conduct." *Id*. at 14.

---

[2] *See* Presentence Investigation Report ("PSR") ¶ 20, 2015 conviction for driving while intoxicated.

[3] Exhibit 1, Hawaii Police Report.

The Defendant's discharge from the United States Army did not deter him from impaired driving. A few years later, on May 20, 2018, the Defendant once again crashed into another car while driving under the influence. PSR ¶ 22. At an intersection in Montgomery County, Maryland, the Defendant blew through a stop sign at a high rate of speed and struck another car that was lawfully driving through the intersection. This other car, driven by a 56-year-old man with his 12-year-old daughter in the passenger's seat, rolled over from the impact. Miraculously, neither victim was injured. *Id*. at 7.

After the Defendant admitted to drinking earlier that day, police conducted Standard Field Sobriety Tests ("SFST"), which the Defendant failed. And just as he did in Honolulu a few years prior, the Defendant quickly tried to talk his way out of the situation, telling officers, "to be honest with you, I can give my information, everything's okay", and that he was going to take an Uber home. PSR ¶ 22, at 8. When a police officer asked the Defendant to submit to SFSTs, he responded that he would rather go with the officer to be processed. *Id.* The Defendant then continued to plead with the officers, telling them, ""I'll just go wherever you want me to go." *Id*. Ultimately, the Defendant was arrested for driving a vehicle while impaired by alcohol, found guilty, and sentenced to ninety days' incarceration, with fifty-four days suspended, and seven months of probation. *Id*. at 7. Maryland Department of Motor Vehicles records reflect that the Defendant is required to have ignition interlock in his vehicle. *Id*. at 8.

So too did the Defendant's thirty-six day sentence fail to deter him from dangerous driving. On November 9, 2021, the Defendant was arrested in Virginia for attempted murder, felony eluding, assault and battery, assault and battery on an officer, and reckless driving. That day, a Virginia State Police officer received a "be on the lookout" alert for an AUDI Q5 that was seen driving erratically and striking multiple vehicles without stopping. PSR ¶ 23, at 9. The officer

3

later saw a vehicle matching that description, which the Defendant was driving erratically with his hazard lights on, and his passenger side tires on the shoulder of the road. *Id.*  Nearby vehicles scrambled to move away from the Defendant's car. *Id.*  The officer turned on his emergency lights and drove up behind the Defendant. *Id.* The Defendant sped forward and rammed his car into the passenger side of another marked police car. *Id.*  Both police cars followed the Defendant with their emergency lights on and sirens activated. *Id*.

As he sped away, the Defendant struck a motorcyclist on I-95. *Id.*  The motorcyclist was able to remain mobile and tried to get away from the Defendant, but the Defendant followed closely, continuing to disregard the police lights and sirens. *Id.*  When the Defendant made a right turn after exiting the interstate, one of the officers made a Pursuit Intervention Technique ("PIT") maneuver on the Defendant's vehicle, which caused him and the motorcycle driver to crash in a nearby yard. *Id*.

When the police officers approached the Defendant, they instructed him to exit his car and get on the ground. *Id.*  The Defendant climbed through his window and sat on the roof of his car. He did not comply with commands, instead yelling that he had a taser. *Id.*  Then, he took off his clothing. *Id.* at 10.  When an officer tried to handcuff the Defendant, he was combative. *Id.*  He ran around his car and across the street to avoid capture. *Id.*  Another officer stepped in to assist with the arrest, but the Defendant kept fighting and pulling his arms away. *Id.*  The Defendant struck the three officers several times and attempted to reach for the area on the officer's belt where the officer's gun and mace were located. *Id.*  When a fourth officer arrived, the police were finally able to arrest the Defendant. *Id*.

The attempted murder charge was later dropped, but the Defendant was found guilty of reckless driving and endangering life, limb, or property; four counts of assault and battery; and

4

felony eluding or disregarding of police.[4] PSR ¶ 23, at 8-9.  The court sentenced the Defendant to six consecutive terms of incarceration, all of which were suspended in large part.[5]  After setting aside the suspended portions of the sentences, the Defendant was sentenced to only 30 days' imprisonment.  *Id*.  The Defendant did not sustain injuries, but two of the police officers and the motorcycle victim did.  One police officer sustained an injury to his left knee, while the other had a head laceration and a broken finger from his efforts to arrest the Defendant.[6]  The motorcycle driver was transported to the hospital for the injuries he sustained from the crash.[7]

**B.  February 27, 2025 Conduct**

On February 27, 2025, at around 01:30 in the morning, the Defendant called 911 for assistance.  The Defendant told the Arlington, Virginia 911 operator that his car had broken down, but he could not tell the operator where he was located, so he would just call an "Uber Black" and "get out of [there]."[8]  The Defendant then provided a false name ("Ryan") to the operator and hung up midway through the call.[9]  The operator eventually determined that the Defendant was located

---

[4] The Defendant entered an *Alford* plea in this case. At sentencing, the Defendant's attorney claimed that the Defendant was suffering from delusions during the incident. Virginia Sentencing Audio Recording, provided to Defense during discovery.

[5] For eluding and disregarding police, the Defendant received 5 years' incarceration, with 4 years and 355 days suspended, 2 years of supervised probation, and 90 days' operator license suspension. For each of the four Assault and Battery convictions, the Defendant was sentenced to 365 days' incarceration, with 355 days suspended. Finally, for reckless driving/endangering life, limb, or property, the Defendant received a 365-day sentence, with 355 days suspended, and a 6-month operator license suspension. PSR ¶ 23.

[6] This information was obtained from the Virginia State Police report narrative and the sentencing audio recording, both of which were provided to Defense in discovery.

[7] *Id*.

[8] Arlington 911 Audio, produced to Defense during discovery.

[9] *Id*.

near the George Washington Memorial Parkway and alerted the United States Park Police ("USPP"). The Arlington 911 operator informed USPP that the Defendant sounded "very intoxicated" on the call.[10] USPP officers responded to the scene and found the Defendant's car parked on the side of the road. PSR ¶ 10.

When the officers approached the vehicle, they found the Defendant in the driver's seat of the car. The officers attempted to speak with the Defendant, but he refused to roll down his car windows, instead electing to tell the officers to "go to hell."[11] The Defendant later changed his mind and exited the car voluntarily. Officers noticed that the Defendant smelled strongly of mouthwash and alcohol. PSR ¶ 10. Based on the totality of the circumstances, including the Defendant's slurred speech and inability to stand or walk steadily without assistance, the USPP officers determined that the Defendant was incapable of safely operating his vehicle and arrested him for driving under the influence, in violation of 36 C.F.R. § 4.23(a)(1). ECF No. 1; *see also* PSR ¶ 10. Based on the location of his parked vehicle, the officers also cited the Defendant for obstructing traffic, in violation of 36 C.F.R. § 4.13(a). ECF No. 4.

Officers then conducted an inventory search of the Defendant's vehicle and located empty bottles of liquor and half-full bottles of whiskey and mouthwash. PSR ¶ 10. When USPP officers took the Defendant to the police station, they read him *Miranda* warnings, provided him with a *Miranda* warning acknowledgment form and consent for chemical testing form, and asked him to take a blood alcohol concentration test. PSR ¶ 11. In response, the Defendant drew all over and then ripped up the forms, threw a pen across the room, and refused to submit to the test, in violation of 36 C.F.R. § 4.23(c)(2). *Id. See also* ECF No. 3.

---

[10] *Id.*

[11] Body worn camera footage, produced to Defense during discovery. *See also* PSR ¶ 10.

### C. **Procedural History**

The traffic citations directed the Defendant to appear in court on March 6, 2025. ECF No. 2.  When the Defendant failed to appear that day, this Court issued a bench warrant for his arrest. ECF No. 10.  The Defendant was arrested in the District of Maryland on March 28, 2025, and had his initial appearance before this Court on April 1, 2025. ECF No. 17.  This Court issued an order for the Defendant's pretrial release, which included a condition that the Defendant refrain from operating a motor vehicle and attend mental health testing and treatment and take all medication as directed. ECF No. 18.  The Defendant later moved to modify his pretrial conditions to permit him to drive with an ignition interlock device in his car, which motion this Court granted in part on May 20, 2025. ECF Nos. 21, 25.  On July 1, 2025, the Court issued a Petition and Order on Violation of Pretrial Release regarding the Defendant's dozens of missed remote alcohol tests, April 12, 2025, test with a blood alcohol concentration of 0.020%, and May 20, 2025, positive drug screen. ECF No. 34.  On July 8, 2025, the Defendant pleaded guilty to all three charges. ECF No. 38.  The same day, the Court found him in violation of the conditions of his pretrial release as alleged in the Petition and imposed a one-day step back.  ECF No. 40.

## II.    **LEGAL STANDARD**

When making a sentencing decision, courts consult the Guidelines and the factors set forth in 18 U.S.C. § 3553(a), though the Guidelines are purely advisory. *See United States v. Booker*, 543 U.S. 220, 264 (2005); *see also United States v. Kimbrough*, 552 U.S. 85, 90 (2007).  In this case, however, the Defendant's offenses all constitute Class B misdemeanors, which carry maximum penalties of six months' imprisonment, a $5,000 fine, and five years of probation.  36

C.F.R. § 1.3; 18 U.S.C. §§ 1865; 3571.[12]  The Sentencing Guidelines do not apply to Class B or C misdemeanors. United States Sentencing Guidelines ("U.S.S.G.") § 1B1.9; *see also* PSR ¶ 18.  In fashioning sentences for Class B and C misdemeanors, courts must impose a sentence authorized by statute. U.S.S.G. § 1B1.9 & n.1; *see also United States v. Harris*, 27 F.3d 111, 116 (4th Cir. 1994).  Without a relevant sentencing guideline as a "starting point and the initial benchmark," courts have great discretion in selecting appropriate sentences for Class B misdemeanors that comport with the requirements of 18 U.S.C. § 3553. *United States v. Finley*, 531 F.3d 288, 293-94 (4th Cir. 2008) (citing *Gall v. United States*, 128 S.Ct. 586, 596 (2007)).

Section 3553(a) directs the Court "in determining the particular sentence to impose" to consider: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the statutory purposes that counsel that the Court must impose a sentence "sufficient, but not greater than necessary" to do the following:

> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
> (B) to afford adequate deterrence to criminal conduct;
> (C) to protect the public from further crimes of the defendant; and
> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner . . . .;

(3) the kinds of sentences available; (4) the kinds of sentence and the sentencing range as set forth in the Sentencing Guidelines; (5) the Sentencing Guidelines policy statements; (6) the need to avoid unwarranted sentencing disparities; and (7) the need to provide restitution to any victims of the offense. 18 U.S.C. § 3553(a).

---

[12] The Defendant entered a plea of guilty to all three charged offenses, driving while intoxicated, in violation of 36 C.F.R. § 4.23(a)(1), refusal to submit to a BAC test in violation of 36 C.F.R. § 4.23(c)(2), and stopping on the highway, in violation of 36 C.F.R. § 4.13(a).

### III.  <u>ANALYSIS</u>

At a minimum, this case involves three drunk driving convictions, four cars, and five people.  By the United States' count, the Defendant has caused damage to at least this many vehicles and harmed this many people by driving dangerously.[13]  The Defendant's history counsels in favor of a significant sanction in this case. 18 U.S.C. § 3553(a)(1).  The Defendant has demonstrated time and again that he will put his comfort and convenience above the wellbeing of other drivers.  And when he gets caught, he either pleads with law enforcement to let him take an Uber home or becomes combative and noncompliant.  Those pleas reflect the Defendant's consciousness of guilt.  Even while intoxicated, he knows what he is doing was wrong, but he chooses to do it anyway, willfully disregarding both his own safety and that of other motorists who shared the road with him.  Because the Defendant has demonstrated his inability, or unwillingness, to change, this Court's intervention and supervision are necessary to protect the public from the Defendant's dangerous behavior. 18 U.S.C. § 3553(a)(2)(C).

Specific deterrence is also particularly important in this case. The Defendant's first DWI in 2015, with a blood alcohol content of .19 grams per 100 liters of blood, resulted in a suspended sentence and an order to complete an Alcohol Safety Action Program, which he did complete. PSR ¶ 20.  This DWI also resulted in his separation from the United States Army, PSR ¶ 46, but this life-altering consequence did not lead the Defendant to change his ways. Instead, just three years later, the Defendant drove drunk again, this time in Montgomery County, Maryland.  He struck another motorist broadside as the other vehicle was lawfully travelling through an intersection. For this offense the Defendant served thirty-six days in prison. *Id.*  As a part of his sentence, the

---

[13] One car in Hawaii, one car in Maryland, one police car and one motorcycle in Virginia. Two victims in Maryland, two injured police officers and one motorcyclist sent to the hospital in Virginia.

Defendant also had to attend victim impact panel meetings to hear from those who have experienced the devastating effects of drunk driving crashes.[14]  Even after hearing from these victims, the Defendant continued to drive while intoxicated.

Finally, while not conclusively a driving while intoxicated or impaired incident, the Defendant's six-count conviction for felony eluding, assault and battery, and reckless driving, against the background of the Defendant's alcohol abuse, is incredibly concerning.  This string of incidents over the past ten years demonstrates that, in addition to a period of incarceration, the Defendant should be placed under supervision by the Probation Office for the maximum term allowable; five years.  All the above incidents involved driving, most involved a traffic accident, and they collectively demonstrate that the Defendant should not be driving.  Thus, a special condition of his probation should include a complete bar on driving within the United States. This is a heavy sanction, but the Defendant's history and characteristics warrant such a penalty.

Section 3553(a)(2)(A), the need to promote respect for the law, also counsels in favor of a significant sentence.  The Defendant appears, by his actions described above, to have a general disregard for the law and the safety of law enforcement officers. PSR ¶¶ 9–13, 20–23.  The Defendant's behavior on February 27, 2025, parallels his disrespectful behavior in past police interactions.  In this case, just as his previous DWIs, he behaved in an incoherent, uncooperative manner when approached by police. *Compare* PSR ¶¶ 9–13, *with* PSR ¶ 20 *and* PSR ¶ 22.  The Defendant has not learned from his prior DWI convictions, and in his interactions with police during this case, he demonstrated a complete disrespect for the law. PSR ¶ 11.

Nothing short of a significant term of imprisonment and prohibition of driving for five years will serve to accomplish the goals of sentencing.  To reflect the seriousness of these offenses,

---

[14] Exhibit 2, Maryland Disposition.

protect the public, deter both the Defendant and others from driving while intoxicated, promote respect for the law, and to provide just punishment for his conduct, the United States respectfully requests that this Court sentence the Defendant to ninety days of incarceration, followed by five years of probation, with the special conditions that he attend the Virginia Alcohol Safety Action Program and that he not be permitted to drive at all while under supervision, in addition to special conditions one through four recommended in the PSR, and a $2000 fine.

///

///

///

///

///

///

///

///

///

///

///

///

///

///

///

///

///

## IV.    CONCLUSION

For the above-stated reasons, the United States submits that a sentence of ninety days of incarceration followed by five years of probation, with the special conditions that he attend the Virginia Alcohol Safety Action Program and that he not be permitted to drive at all while under supervision, in addition to special conditions one through four recommended in the PSR, and a $2000 fine is reasonable and accounts for each of the factors set forth in 18 U.S.C. § 3553(a) and the Guidelines.

Respectfully submitted,

Lindsey Halligan
United States Attorney

*Christopher L. Galarza*
Christopher Galarza
Meredith R. Clement
Special Assistant United States Attorneys
Tony R. Roberts
Assistant United States Attorney
United States Attorney's Office
2100 Jamieson Avenue
Alexandria, VA 22314
Office:    (703) 299-3800
Fax:       (703) 299-3980
Email:    meredith.clement2@usdoj.gov

## **CERTIFICATE OF SERVICE**

I hereby certify that, on October 3, 2025, I caused a copy of the foregoing memorandum to be filed with the Clerk of Court using the CM/ECF system, which will automatically generate a Notice of Electronic Filing (NEF) to all counsel of record.


*Christopher L. Galarza*
Christopher Galarza
Special Assistant United States Attorney

EXHIBIT 1

Honolulu Police Department Report on Incident
#15-213534 dated May 31, 2015

**Honolulu Police Department**

**15-213534**

## Incident Report

<table>
<tr><td rowspan="8" style="writing-mode: vertical-rl;">B A S I C</td><td colspan="2">Incident Type<br>OVUII MD</td><td>Code<br>210</td><td>Reclass</td><td>X Key Rpt</td><td>F/U</td><td>Status<br>Closed</td><td>Disp.<br>1</td><td colspan="2">HRS Section No.<br>HRS 291E-0061</td></tr>
</table>

| | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|

**Incident Type** OVUII MD  — **Code** 210 — Reclass — X Key Rpt — F/U — **Status** Closed — **Disp.** 1 — **HRS Section No.** HRS 291E-0061

**Location of Offense**
Nahua St. &Ala Wai Blvd., Honolulu, HI

**Responsible Officer (Rank Last, First Middle Name    ID Number)**
MPO Borges, ███████    ███████    **Division** D-6

| Beat of Offense | Location Code | Domestic Violence | Date/ Day/ Time Reported | Date/ Day / Time Occurred From | Date/ Day/ Time Occurred To |
|---|---|---|---|---|---|
| 657 | 4 | No | 5-31-2015 /Sun    /0415 | 5-31-2015 /Sun    / 0415 | 5-31-2015 /Sun    / 0430 |

**Related Reports/ Comments**

---

| Business/ School | X Complainant | Victim | Reporting Person | Finder | Witness | Suspect | Race: | / | / |
|---|---|---|---|---|---|---|---|---|---|

**Name (Last, First Middle)** — **DOB** — **Age** — **Juv.** — **Sex**
BORGES, █████ — — — — M

**AKA** █████    **Occupation/ For Juvenile- School Attending** POLICE OFFICER

| SSN | SID | Special Status HPD | BAC | BAC Results |
|---|---|---|---|---|

**Home Address City- Country- State- Zip**

**Employer/ Business Address City- Country- State- Zip**
801 S. Beretania St. Honolulu HI, 96813

**Local Address (for visitors)**

| Home Phone | Local Phone | Business Phone | Work Hours | At Loc Addr Until |
|---|---|---|---|---|

| Height | Weight | Build | Hair Color | Hair Char | Eyes | Compl | Voice | Fac Hair Color | Facial Hair Char |
|---|---|---|---|---|---|---|---|---|---|

**Victim Rel To Suspect** ST — **Who Described** — **Will Prosecute** Yes — **Peculiarities**

**Clothing**

---

| | Injured No | Treated No | | Hospital | | Transported By | EMS # |
|---|---|---|---|---|---|---|---|

**Treatment Reason**
☐ Mental ☐ Suicide ☐ I.C.F ☐ S.C.F ☐ Other
☐ Intox ☐ Drugs ☐ Indust ☐ Uncon ☐ Resisted Assist

| Patient Condition | Patient Disposition | Attending Physician |
|---|---|---|

HONOLULU POLICE DEPARTMENT

CONFIDENTIAL

To be used for Law Enforcement purposes only.  Not to be duplicated.  It and its contents are not to be distributed outside your agency.

| Submitted By: BORGES, ███████ | Approved By: ROHR, ███████ |
|---|---|
| ID Number: ███████    Rank: MPO    Date/ Time: 5-31-2015 / 0832 | ID Number: ███████    Rank: Sgt.    Date/ Time: 5-31-2015 / 0834 |

MDC-HPD-192 Rev. Dec. 2003    This report was prepared, signed, reviewed, submitted, and filed electronically via secure network in accord with Honolulu Police Department policy.    Control No.2336933

**Honolulu Police Department**

**15-213534**

| Business/School | Complainant | Victim | Reporting Person | Finder | Witness | [X] Suspect | Race: | Black | / | |
|---|---|---|---|---|---|---|---|---|---|---|

**P E R S O N**

| Name (Last, First Middle) | | | | DOB | Age | Juv. | Sex |
|---|---|---|---|---|---|---|---|
| CARTER, Bryce S. | | | | 1989 | 25 | No | M |

| AKA | Occupation/ For Juvenile- School Attending |
|---|---|
| | Captain / Military |

| SSN | SID | Special Status | BAC | BAC Results |
|---|---|---|---|---|
| | | | | |

| Home Address City- Country- State- Zip |
|---|
| |

| Employer/ Business Address City- Country- State- Zip |
|---|
| U.S. Marines |

| Local Address (for visitors) |
|---|
| |

| Home Phone | Local Phone | Business Phone | Work Hours | At Loc Addr Until |
|---|---|---|---|---|
| | | | | |

| Height | Weight | Build | Hair Color | Hair Char | Eyes | Compl | Voice | Fac Hair Color | Facial Hair Char |
|---|---|---|---|---|---|---|---|---|---|
| 6'2" | 190 | Average | Blk | Short | Brown | Black | | | |

| Victim Rel To Suspect | Who Described | Will Prosecute | Peculiarities |
|---|---|---|---|
| | | No | |

| Clothing |
|---|
| Black shirt, camo pants |

**H O S P**

| Injured | Treated | Hospital | Transported By | EMS # |
|---|---|---|---|---|
| No | No | | | |

| Treatment Reason | | Patient Condition | Patient Disposition | Attending Physician |
|---|---|---|---|---|
| Mental ☐ Suicide ☐ I.C.F ☐ S.C.F ☐ Other ☐ | Intox ☐ Drugs ☐ Indust ☐ Uncon ☐ Resisted Assist ☐ | | | |

**M O**

| A | B | C | D | E | F | G | H | I | | J | | K | | L | | M | N | O | P | Q | R | | S | Latents |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 4 | | | 4 | | 4 | | 4 | 4 | | 4 | | 4 | | 4 | | 4 | 4 | 4 | 4 | 4 | 4 | | | Not Dusted |

**S Y N O P S I S**

CARTER was arrested for OVUII subsequent to a motor vehicle collision. DISPOSITION: Arrested and booked.

| Submitted By: BORGES, | | Approved By: ROHR |
|---|---|---|
| ID Number:    Rank: MPO    Date/ Time: 5-31-2015 / 0832 | | ID Number:    Rank: Sgt.    Date/ Time: 5-31-2015 / 0834 |

MDC-HPD-192 Rev. Dec. 2003     This report was prepared, signed, reviewed, submitted, and filed electronically via secure network in accord with Honolulu Police Department policy.     Control No.2336933

**Honolulu Police Department**

**15-213534**

**Continuation Page**

| Incident Type | Code | | Status | Disp. | HRS Section No |
|---|---|---|---|---|---|
| OVUII MD | 210 | ☐ Reclass ☒ Key Rpt ☐ F/U | Closed | 1 | HRS 291E-0061 |

| Complainant (Last, First Middle Name) | Date of Occurrence |
|---|---|
| BORGES, | 5-31-2015 |

| Location of Offense |
|---|
| Nahua St. &Ala Wai Blvd. |

### ASSIGNMENT/ARRIVAL:

I am currently assigned to District 6, 1st Watch as 9617. On 5-31-15 at about 0412, I was dispatched to the area of Nahua St. and Ala Wai Blvd. on a argument call involving several males. I arrived at about 0414 hours.

### SCENE/TIME ELEMENT:

This incident occurred at the intersection of Nahua St. and Ala Wai Blvd on 5-31-15 at about 0415 hours.

### OBSERVATIONS:

Upon arrival to the intersection of Nahua St. and Ala Wai Blvd. I did not observe any argument or fight in progress. I did observe 4-5 males though congregating on the South East corner. I stopped to talk to the males where all related that everything was fine and that a argument had occurred but had been abated prior to our arrival.

Just as I was standing on the corner and about to leave the scene, a white Audi 2DSD bearing HI plates RYZ922 which was parked in a no parking zone just 15-20 feet away from me began to reverse. It slowly reversed into another vehicle which was legally parked in a marked stall. As I looked toward the reversing car, I observed a male, later identified as Bryce CARTER sitting in driver seat. Next to him in the front passenger seat was another male who appeared to be passed out. I observed CARTER with his left hand on the steering wheel as he was intensely looking toward the rear of the vehicle using his rear view mirror and turning his head to the rear over his right shoulder to look out the window. I watched the vehicle moving backwards and knew it was going to hit the car behind it. I tried to yell out "Stop" but by the time I did, CARTER had just reversed his car and collided with the parked, unattended vehicle behind it causing a bang or popping sound. As soon as CARTER collided with the vehicle behind it his vehicle came to a stop against the parked vehicle behind it, I did not observe the back break lights illuminate and observed the rear vehicle starting to rock back and forth as if CARTER still had his foot lightly on the gas peddle.

I immediately walked up to the vehicle and instructed CARTER to press the brakes. He did so and then placed the vehicle in park, and immediately exited the vehicle. I instantly noticed that CARTER'S eyes were red, and blood shot. He stumbled out of the vehicle, stood to his feet and with slurred and incoherent speech began to ramble on and on of "I know I just hit that car." "I am perfectly willing to take a taxi home." "My insurance will cover the damage."

### SUSPECT'S DEMEANOR:

CARTER'S speech was heavily slurred. He spoke incoherently, sometimes with backwards sentences. He blindly repeated the same statements over and over and asked the same 3-4 questions over and over even after I just answered them for the 5th time. He was unsteady on his feet and swayed side to side while standing. CARTER smelled heavily of a consumed alcoholic beverage which I detected as it was emitted from his breath when he spoke. CARTER had two bar wrist bands on his wrist. These wrists bands are given by liquor establishments and issued to patrons 21 years and older. I asked CARTER if he had been drinking to which he replied he had been drinking at Play Bar.

| Submitted By: BORGES, | | | Approved By: ROHR, | | |
|---|---|---|---|---|---|
| ID Number: | Rank: MPO | Date/ Time: 5-31-2015 / 0832 | ID Number: | Rank: Sgt. | Date/ Time: 5-31-2015 / 0834 |

MDC-HPD-192B Rev. Dec. 2003 | This report was prepared, signed, reviewed, submitted, and filed electronically via secure network in accord with Honolulu Police Department policy. | Control No.2336933

**Honolulu Police Department**

**Continuation Page**

| Incident Type OVUII MD | Code 210 | ☐ Reclass ☒ Key Rpt ☐ F/U | Status Closed | Disp. 1 | HRS Section No HRS 291E-0061 |
|---|---|---|---|---|---|
| Complainant (Last, First Middle Name) BORGES, | | | | | Date of Occurrence 5-31-2015 |
| Location of Offense Nahua St. &Ala Wai Blvd. | | | | | |

**SUSPECT IDENTIFIED:**

CARTER identified himself via Military I.D.  CARTER did not have his license on his person.  A check via dispatch revealed that CARTER had been issued a license from Virginia.

Bryce S. CARTER
DOB: ▇▇89
VADL: ▇▇▇▇▇

**UNIT 1:**
HI plates: RYZ922
2009 Audi, 2DSD, white
Operator: Bryce CARTER

**UNIT 2:**
HI plates: SCC710
VW Cabrio, 2002
Parked/Unattended

**SFST:**
I instructed Officer ▇GALICHA to administer the SFST to CARTER.  Officer GALICHA related to me afterward that CARTER had failed the SFST.

**PAS:**
No Preliminary Alcohol Screening device was available for use at the time of this incident.

**MOTOR VEHICLE COLLISION:**
Refer to Officer MVC report documented under HPD report 15-213535 submitted by Officer GALICHA for further facts.

**ARREST:**
On 5-31-15 at about 0430 hours, I arrested CARTER for the offense of OVUII without incident.

**INJURIES:**
At the time of arrest, I did not observe CARTER to have any injuries nor did he complain of any when asked.  CARTER related that he was not sick, injured, or taking medications.

**TRANSPORT:**
I transported CARTER to the Central Receiving Desk via HPD vehicle #1296.  We arrived at about 0500 hours without incident.

**DESK COMMANDER APPRISED:**

| Submitted By: BORGES, ▇▇▇▇ | | | Approved By: ROHR, ▇▇▇ | | |
|---|---|---|---|---|---|
| ID Number: ▇▇▇ | Rank: MPO | Date/ Time: 5-31-2015  / 0832 | ID Number: ▇▇▇ | Rank: Sgt. | Date/ Time: 5-31-2015  / 0834 |

MDC-HPD-192B Rev. Dec. 2003    This report was prepared, signed, reviewed, submitted, and filed electronically via secure network in accord with Honolulu Police Department policy.    Control No.2336933

**Honolulu Police Department**

**Continuation Page**

| Incident Type<br>OVUII MD | Code<br>210 | ☐ Reclass ☒ Key Rpt ☐ F/U | Status<br>Closed | Disp.<br>1 | HRS Section No<br>HRS 291E-0061 |
|---|---|---|---|---|---|
| Complainant (Last, First Middle Name)<br>BORGES, | | | | | Date of Occurrence<br>5-31-2015 |
| Location of Offense<br>Nahua St. &Ala Wai Blvd. | | | | | |

I appraised Lt. ▮ CRICCHIO of the facts and circumstances of this arrest to which he accepted.

IMPLIED CONSENT:
I read CARTER the implied consent via HPD-396K. CARTER elected to participate in the blood draw test.
Refer to attached HPD-396K

OBSERVATIONS:
While waiting for the on-call nurse to arrive, CARTER continued to act somewhat erratic. He asked the same question over and over as if he had just forgot the answer I gave him just minutes ago. CARTER moved around constantly for several minutes at a time before putting his head down on the counter top and falling asleep for several minutes at a time. He did this repeatedly, moving, asking the same irrelevant questions over and over, and then going to sleep. While CARTER slept for several minutes, he urinated on the floor through his pants.

Even several hours after being arrested, CARTER displayed signs of impairment with his slurred, incoherent speech. CARTER was taken to the bathroom two times, once upon arrival and once a hour later where I observed that he still had unbalanced and unsteady body movements. CARTER held on to the small wall for balance while using the bathroom.

BLOOD DRAW:
On 5-31-15 at about 0720 hours, ▮ PERRY collected blood evidence from CARTER. Refer to attached form.

DISPOSITION:
Arrested and booked.

| Submitted By: BORGES, ▮ | | | Approved By: ROHR▮ | | |
|---|---|---|---|---|---|
| ID Number: ▮ | Rank: MPO | Date/ Time: 5-31-2015 / 0832 | ID Number: ▮ | Rank: Sgt. | Date/ Time: 5-31-2015 / 0834 |

MDC-HPD-192B Rev. Dec. 2003    This report was prepared, signed, reviewed, submitted, and filed electronically via secure    Control No.2336933
network in accord with Honolulu Police Department policy.

**Honolulu Police Department**

**15-213534**

### Incident Report

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| **Incident Type** OVUII MD | **Code** 210 | ☐ Reclass | ☐ Key Rpt | ☒ F/U | **Status** Closed | **Disp.** 1 | **HRS Section No.** HRS 291E-0061 | |

**B A S I C**

**Location of Offense**
Nahua St. & Ala Wai Blvd., Honolulu, HI

| **Responsible Officer (Rank Last, First Middle Name** | **ID Number)** | | **Division** |
|---|---|---|---|
| MPO Borges, ███████ | ███████ | | D-6 |

| **Beat of Offense** 657 | **Location Code** 4 | **Domestic Violence** No | **Date/ Day/ Time Reported** 5-31-2015 /Sun /0415 | **Date/ Day / Time Occurred From** 5-31-2015 /Sun / 0415 | **Date/ Day/ Time Occurred To** 5-31-2015 /Sun / 0430 |
|---|---|---|---|---|---|

**Related Reports/ Comments**

---

| ☐ Business/ School | ☒ Complainant | ☐ Victim | ☐ Reporting Person | ☐ Finder | ☐ Witness | ☐ Suspect | **Race:** / / |

**P E R S O N**

| **Name (Last, First Middle)** BORGES, ███ | | | **DOB** | **Age** | **Juv.** | **Sex** M |
|---|---|---|---|---|---|---|

| **AKA** | **Occupation/ For Juvenile- School Attending** POLICE OFFICER |
|---|---|

| **SSN** | **SID** | **Special Status** HPD | **BAC** | **BAC Results** |
|---|---|---|---|---|

**Home Address City- Country- State- Zip**

**Employer/ Business Address City- Country- State- Zip**
███████████████

**Local Address (for visitors)**

| **Home Phone** | **Local Phone** | **Business Phone** | **Work Hours** | **At Loc Addr Until** |
|---|---|---|---|---|

| **Height** | **Weight** | **Build** | **Hair Color** | **Hair Char** | **Eyes** | **Compl** | **Voice** | **Fac Hair Color** | **Facial Hair Char** |
|---|---|---|---|---|---|---|---|---|---|

| **Victim Rel To Suspect** ST | **Who Described** | **Will Prosecute** Yes | **Peculiarities** |
|---|---|---|---|

**Clothing**

---

**H O S P**

| **Injured** No | **Treated** No | **Hospital** | **Transported By** | **EMS #** |
|---|---|---|---|---|

| **Treatment Reason** | | | | **Patient Condition** | **Patient Disposition** | **Attending Physician** |
|---|---|---|---|---|---|---|
| ☐ Mental | ☐ Suicide | ☐ I.C.F | ☐ S.C.F | ☐ Other | | |
| ☐ Intox | ☐ Drugs | ☐ Indust | ☐ Uncon | ☐ Resisted Assist | | |

---

| **Submitted By:** BORGES, ███████ | **Approved By:** WHARTON, ███████ |
|---|---|
| **ID Number:** ███████ **Rank:** MPO **Date/ Time:** 7-16-2015 / 2220 | **ID Number:** ███████ **Rank:** Sgt. **Date/ Time:** 7-16-2015 / 2221 |

MDC-HPD-192 Rev. Dec. 2003    This report was prepared, signed, reviewed, submitted, and filed electronically via secure network in accord with Honolulu Police Department policy.    Control No.2371905

**Honolulu Police Department**

Page 2 of 3

**15-213534**

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| ☐ Business/School | ☐ Complainant | ☐ Victim | ☐ Reporting Person | ☐ Finder | ☐ Witness | ☒ Suspect | Race: | Black |

| Name (Last, First Middle) | | | | DOB | Age | Juv. | Sex |
|---|---|---|---|---|---|---|---|
| CARTER, Bryce S. | | | | 1989 | 25 | No | M |

| AKA | Occupation/ For Juvenile- School Attending |
|---|---|
| | Captain / Military |

| SSN | SID | Special Status | BAC | BAC Results |
|---|---|---|---|---|
| | | | | |

**Home Address City- Country- State- Zip**

**Employer/ Business Address City- Country- State- Zip**
U.S. Marines

**Local Address (for visitors)**

| Home Phone | Local Phone | Business Phone | Work Hours | At Loc Addr Until |
|---|---|---|---|---|
| | | | | |

| Height | Weight | Build | Hair Color | Hair Char | Eyes | Compl | Voice | Fac Hair Color | Facial Hair Char |
|---|---|---|---|---|---|---|---|---|---|
| 6'2" | 190 | Average | Blk | Short | Brown | Black | | | |

| Victim Rel To Suspect | Who Described | Will Prosecute | Peculiarities |
|---|---|---|---|
| | | No | |

| Clothing |
|---|
| Black shirt, camo pants |

| Injured | Treated | Hospital | Transported By | EMS # |
|---|---|---|---|---|
| No | No | | | |

| Treatment Reason | Patient Condition | Patient Disposition | Attending Physician |
|---|---|---|---|
| ☐ Mental ☐ Suicide ☐ I.C.F ☐ S.C.F ☐ Other  ☐ Intox ☐ Drugs ☐ Indust ☐ Uncon ☐ Resisted Assist | | | |

| A | B | C | D | E | F | G | H | I | | J | | K | | L | | M | N | O | P | Q | R | | S | Latents |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 4 | | 4 | | 4 | | 4 | 4 | 4 | | 4 | | 4 | | 4 | | 4 | 4 | 4 | 4 | 4 | 4 | | | Not Dusted |

**Blood draw follow up.**

| Submitted By: BORGES, | | | Approved By: WHARTON, | | |
|---|---|---|---|---|---|
| ID Number: | Rank: MPO | Date/ Time: 7-16-2015 / 2220 | ID Number: | Rank: Sgt. | Date/ Time: 7-16-2015 / 2221 |

MDC-HPD-192 Rev. Dec. 2003     This report was prepared, signed, reviewed, submitted, and filed electronically via secure network in accord with Honolulu Police Department policy.     Control No.2371905

**Honolulu Police Department**

**15-213534**

**Continuation Page**

| Incident Type<br>OVUII MD | Code<br>210 | ☐ Reclass ☐ Key Rpt ☒ F/U | Status<br>Closed | Disp.<br>1 | HRS Section No<br>HRS 291E-0061 |
|---|---|---|---|---|---|
| Complainant (Last, First Middle Name)<br>BORGES,■ | | | | | Date of Occurrence<br>5-31-2015 |
| Location of Offense<br>Nahua St. &Ala Wai Blvd. | | | | | |

ASSIGNMENT/ARRIVAL:
I am currently assigned to District 6, 1st Watch Patrol.

BACKGROUND INFORMATION:
CARTER was arrested for OVUII on 5-31-15.  He elected to take the blood test.

For more information refer to Key Report.

BLOOD TEST FOR ALCOHOL RELATED OFFENSES:
On 7-16-15 at about 2200 hours, I received the results for CARTER'S blood alcohol concentration (0.19) via
■PERRY taken on 5-3115.

For more information refer to Sworn Statements RE: Blood Test for Alcohol Related Offense attached.

DISPOSITION:
Refer to Key Report.

SWORN STATEMENT:
I, ■ BORGES, Honolulu Police Officer, swear that the above information is true and correct.

| Submitted By: BORGES, ■ | | | Approved By: WHARTON■ | | |
|---|---|---|---|---|---|
| ID Number: ■ | Rank: MPO | Date/ Time: 7-16-2015 / 2220 | ID Number: ■ | Rank: Sgt. | Date/ Time: 7-16-2015 / 2221 |

MDC-HPD-192B Rev. Dec. 2003              This report was prepared, signed, reviewed, submitted, and filed electronically via secure              Control No.2371905
                                         network in accord with Honolulu Police Department policy.

## Honolulu Police Department

Report No. 15-213534

## STANDARDIZED FIELD SOBRIETY TEST REPORT

Subject's Name: Bryce CARTER    Sex: M   Age: 25   D.O.B. ███ 89

Location of Test: Nahua Ave / Ala Wai Boulevard

Arresting Officer: ███ BORGES    Date: 5-31-15   Time: 0420

Odor of intoxicants?

NO _____   YES X_____   ( Light ☐   Moderate ☐   Strong ☐   ☒ Other Odors _____ )
_____
_____

Subject's eyes:

Red ☒   Watery ☒   Bloodshot ☒   Glassy ☒   Appear Normal ☐

Bryce CARTER , you are advised that the standardized field sobriety test will be explained
<u>Name of Subject</u>

*in detail and demonstrated to you. You will be judged on how well you follow the instructions, as well as your*

*performance for each test. If you do not understand any test, ask questions.*

**DO YOU HAVE ANY PHYSICAL DEFECTS OR SPEECH IMPEDIMENTS?**

NO Y_____   YES _____   Specify: _____

**ARE YOU TAKING ANY MEDICATION?**

NO Y_____   YES _____   Specify: _____

**ARE YOU UNDER THE CARE OF A DOCTOR OR DENTIST FOR ANYTHING?**

NO Y_____   YES _____   Specify: _____

**ARE YOU UNDER THE CARE OF AN EYE DOCTOR?**

NO Y_____   YES _____   Specify: _____

**DO YOU HAVE AN ARTIFICIAL OR GLASS EYE?**

NO Y_____   YES _____   Specify: _____

**ARE YOU AN EPILEPTIC OR A DIABETIC?**

NO Y_____   YES _____   Specify: _____

HPD-424A (R-08/07)    (over)

Report No. 15-213534

## HORIZONTAL GAZE NYSTAGMUS

Subject wearing contacts     Yes ☐     No ☒
Equal Tracking               Yes ☒     No ☐
Pupil Size     Equal ☒     Unequal ☐

|  | Left Eye | Right Eye |
|---|---|---|
| Lack of smooth pursuit | ✗ | ✗ |
| Distinct and Sustained Nystagmus at maximum deviation | ✗ | ✗ |
| Onset of Nystagmus prior to 45 degrees | ✗ | ✗ |

Other: moved head from left to
right during test.

_____

_____

### ONE LEG STAND

| Foot Raised Left / Right | 0 to 10 seconds | 11 to 20 seconds | 21 to 30 seconds |
|---|---|---|---|
| Sways | all | | |
| Raises arms | all | | |
| Hops | all | | |
| Foot down | all | | |

Other: _____

_____

Cannot do test (explain): dropped foot
3 times within 10 seconds
and stopped test.

## WALK AND TURN

INSTRUCTIONS STAGE:

Cannot keep balance     ☒
Starts too soon          ☒

WALKING STAGE:

| | First 9 Steps | Second 9 Steps |
|---|---|---|
| Stops walking | | |
| Misses heel-toe | all | all |
| Steps off line | all | all |
| Raises arms | | |
| Actual steps taken | 12 | 10 |

The turn (describe): Took first 4 steps
then made a turn. Then he stopped
turned around and took 8 more
steps.

_____

Cannot do test (explain): Completed test,
then asked me to just let him
catch a cab because he is getting
promoted to Captain in the Marines.

_____

Description of test area: Well lighted area
smooth surface with no trade
winds.

_____

Other Remarks: CARTER kept begging to let him go because he
was getting promoted.

I, ▓▓▓ [signature] _____, Honolulu Police Officer, swear that the above information is true and correct.

Officer's Signature _____     Identification No. ▓▓▓   Date / Time 5-3-15/0420     Sgt ▓▓▓ Andres Supervisor's Signature     Identification No. ▓▓▓

HPD-424A (R-08/07)

## USE OF INTOXICANTS WHILE OPERATING A VEHICLE
## IMPLIED CONSENT FOR TESTING

DATE OF ARREST: 5-31-15                    REPORT NO.: 15-213534

ARRESTEE'S/RESPONDENT'S NAME: BRYCE    CARTER

LAST FOUR DIGITS OF SSN: XXX-XX-_____

I, _____ BORGES _____, *a police officer, swear that the following statements were read to the arrestee/respondent.*

**Pursuant to chapter 291E, Hawaii Revised Statutes (HRS), Use of Intoxicants While Operating a Vehicle, you are being informed of the following:**

1. Any person who operates a vehicle upon a public way, street, road, or highway or on or in the waters of the State shall be deemed to have given consent to a test or tests for the purpose of determining alcohol concentration or drug content of the persons breath, blood, or urine as applicable.

2. You are not entitled to an attorney before you submit to any tests or tests to determine your alcohol and/or drug content.

3. You may refuse to submit to a breath or blood test, or both for the purpose of determining alcohol concentration and/or blood or urine test, or both for the purpose of determining drug content, none shall be given, except as provided in section 291E-21. However, if you refuse to submit to a breath, blood, or urine test, you shall be subject to up to thirty days imprisonment and/or fine up to $1,000 or the sanctions of 291E-65, if applicable. In addition, you shall also be subject to the procedures and sanctions under chapter 291E, part III.

### ALCOHOL CONCENTRATION

_____ AGREED TO TAKE A BREATH TEST AND REFUSED THE BLOOD TEST

__✗__ AGREED TO TAKE A BLOOD TEST AND REFUSED THE BREATH TEST

_____ AGREED TO TAKE BOTH A BREATH TEST AND A BLOOD TEST

_____ REFUSED TO TAKE EITHER A BREATH TEST OR A BLOOD TEST

### DRUG TESTING

_____ AGREED TO TAKE A BLOOD TEST AND REFUSED THE URINE TEST

_____ AGREED TO TAKE A URINE TEST AND REFUSED THE BLOOD TEST

_____ AGREED TO TAKE BOTH A BLOOD TEST AND A URINE TEST

_____ REFUSED TO TAKE EITHER A BLOOD TEST OR A URINE TEST

I, THE ARRESTEE /RESPONDENT, ACKNOWLEDGE THAT I MADE THE CHOICE(S) INDICATED ABOVE AND WAS INFORMED OF THE INFORMATION IN THIS REPORT.

ARRESTEE'S/RESPONDENT'S SIGNATURE: X

DATE/TIME

SIGNED: _____                 5-31-15 / _____

OFFICER'S SIGNATURE          ID NO.          DATE/TIME

COMMENTS: _____

PAGE 1 OF 1

# HONOLULU POLICE DEPARTMENT
## ARREST REPORT

**SI** **ADULT**

| IRN | 1. STATE ID NO. | 2. OTN | 3. REPORT NO. |
|---|---|---|---|
| 15213534 | A6082898 | 3239C16 | 15-213534 |

| 4. DEFENDANT'S NAME(LAST,FIRST,MIDDLE) | 5. SEX | 6. RACE | 7. AGE | 8. DOB | 9. HT | 10. WT | 11. EYES | 12. HAIR |
|---|---|---|---|---|---|---|---|---|
| CARTER, BRYCE, S | M | BLACK/AFRO | 25 | -89 | 6'2" | 190 | BRN | BLK |

| 13. AKA | 14. SSN | 15. OCCUPATION | 16. EMPLOYER/SCHOOL | 21. US |
|---|---|---|---|---|
| | | CAPTAIN OF | US MARINES | |

| 17. ADDRESS | 18 RESIDENCE PHONE | 19. BUSINESS PHONE | 20. BIRTHPLACE | 21. US CITIZEN Y |
|---|---|---|---|---|
| | | | WA US | |

| 22. PLACE OF OFFENSE | 23. OFFENSE DATE/TIME/DAY | 24 DISTRICT | 25. BEAT |
|---|---|---|---|
| NAHUA ST & ALA WAI BLVD HONOLULU, HONOLULU | 05-31-15/04:15/Sunday | 6 | 657 |

| 26. PLACE OF ARREST/BOOKING | 27. ARREST DATE/TIME/DAY | 28. DISTRICT | 29. BEAT |
|---|---|---|---|
| NAHUA ST & ALA WAI BLVD HONOLULU, HONOLULU | 05-31-15/04:30/Sunday | 6 | 657 |

| 30. CHG NO. | 31. ARRESTED FOR | 32. FINAL CHARGE | 33 MOD | 34. CLASS | 35. REPORT NO. | 36. BAIL SET | 37. RELEASE TYPE | 38. RELEASE BY |
|---|---|---|---|---|---|---|---|---|
| 1 | HRS 291E-0061 OVUII PM | HRS 291E-0061 OVUII PM | | PM | 15-213534 | $500 | RBL | SELF |

| 39. HOW ARRESTED | 40. CASE IN CHIEF REPORT NO. | 41. WARRANT CHECKED Y | 42. WARRANT NO. |
|---|---|---|---|
| ON VIEW | | | |

| 43. ARRESTING OFFICER/ID | 44. ASSISTING OFFICER/ID | 45 TRANSPORTING OFFICER/ID |
|---|---|---|
| BORGES, | | BORGES, |

| 46. APPARENT INJURIES | 47.TREATED | 48. REFUSED | 49. MEDICAL ALERT | 50 MEDICATIONS |
|---|---|---|---|---|
| NONE | | | NONE | NONE |

| 51. BAC TYPE | 52. BAC LEVEL | 54. DISPOSITION VEHICLE - KEYS | 55. CUSTODIAL SEARCH BY | 56. PRISONER PROPERTY RECEIPT |
|---|---|---|---|---|
| BLOOD | | | MAEDA, | NO. C479975 |

| 57. RECEIVED BY | 58. RECEIVED DATE/TIME | 59. CHARGED / DISCHARGED BY |
|---|---|---|
| LT CRICCHIO | 05-31-15/05:00 | LT CRICCHIO / |

| 60. RELEASED APPROVED BY | 61. RELEASED DATE/TIME | 62. CHARGED / DISCHARGED DATE/TIME |
|---|---|---|
| L.T. CRICCHIO | 5-31-15/1020 | 05-31-15/07:20 |

| 63. BAIL RECEIVED | 64. COURT - ROOM | 65. APPEARANCE DATE/TIME |
|---|---|---|
| 28 997 | HON DCT /4B | 6-24-15 / 0830 |

66. SYNOPSIS
HPD 1296

LIVESCAN PRINTS

## ORIGINAL
### IN RED

| 67. REPORT WRITTEN BY | 68. APPROVED BY | 69. APPROVED DATE/TIME |
|---|---|---|
| HENDRICKS, | LT CRICCHIO | 05-31-15/05:00 |

Print Date: 05/31/2015

Page 1

HONOLULU POLICE DEPARTMENT
City and County of Honolulu

Report No. 15-26534

Booking No. _____

**CARTER B**

## STATEMENT OF RECEIPT OF DETAINEE'S PROPERTY

Date 5-31-15    Hour 0515

CARTER, Bryce
Name of Detainee

OUU11
Offense

While in the custody of the Honolulu Police Department I know that any property I have will be taken from me for safekeeping. I understand the need to open any closed containers, including wallets and purses, to properly inventory my property for safekeeping purposes.

_____ YES, I give my consent to open my property to inventory its contents.

__X__ NO, I do not give my consent to open my property to inventory its contents.

### LIST OF PROPERTY FOUND ON DETAINEE

| | |
|---|---|
| $ Ø REFUSED _____ Cash | 3 KEYS, 1 FOB Key _____ Keys |
| _____ Checks | _____ Glasses |
| _____ Amount | _____ Sun/Reading |
| 1 WHITE STUD EARING w/ BLACK STAR MISC CARD _____ Miscellaneous | |
| _____ Description | |
| 1 YELLOW NECKLACE 1 WHITE NECKLACE 1 BLACK CELL PHONE | |
| _____ Other Jewelry | |
| 1 BLACK WALLET UNK CONTENT 1 PACK OF CIGARETTE | |
| _____ Wallet/Purse | |
| 1 BLACK WATCH 1 GRAY LIGHTER, 1 PAIR OF SHOES | |
| _____ Watch (Wrist/Pocket) | |
| 1 BLACK BELT, 1 | _____ Signature of Receiving Officer/Witness |
| X REFUSED | PATRICIO |
| _____ Signature of Detainee/Refused to Sign | _____ Signature of Searching Officer/Witness |

Date _____    Hour _____

Received from the Chief of Police per _____ the property listed above.

_____
Signature of Detainee (his or her mark)

C- 479975

Witnessed by: _____

HPD 101 (REV. 6/93)

CITY AND COUNTY OF HONOLULU
**ETHANOL LEVEL**

Hospital _____

HPD # _15-21352Y_

_( 20_ mg Potassium Oxalate, _100_ mg Sodium Fluroide) preservative

Date: _5/31/15_

Name: _Carter, Bryce_          Time: _0720_

Arresting Officer: _X  P-Borges_      ID # _X 0299_

Locked Box # _4_          Site of blood draw _Ljam_

Blood specimen drawn by: _____      _Menlur_
                                      Phlebotomist

Witnessed by: _____

Medication(s) taken in past 24 hours

Report:      _complete_ _6/3/15_ @ _1257_ _Date._ _6/3/15_
_0 19_

Grams Ethanol per 100cc of whole blood.

HPD-115-06 (5/01, 00)

Signed _____ Technologist
                Perry, MT

HONOLULU EMERGENCY SERVICES DEPARTMENT
HEALTH SERVICES BRANCH
840 IWILEI RD
HONOLULU, HI 96817
(808) 723-7888

## BLOOD ALCOHOL CHAIN OF CUSTODY FORM

| **REPORT NO.:** | 15-209049 |
|---|---|
| **PATIENT NAME:** | CARTER, BRYCE |
| **DATE COLLECTED:** | 05/31/15 |
| **TIME COLLECTED:** | 0720 |
| **COLLECTED BY/TITLE:** | PERRY/MT |
| **ARRESTING OFFICER** | BORGES |

*CHAIN OF CUSTODY*

| FROM | TO | DATE/TIME |
|---|---|---|
| PERRY/MT | LOCKED REFRIDGE HPD MAIN STATION 801S BERETANIA | 05/31/15 0725 |
| LOCKED REFRIDGE HPD MAIN STATION 801S BERETANIA | PERRY/MT | 06/3/15 0700 |
| PERRY/MT | LOCKED REFRIDGE HEALTH SERVICES 840 IWILEI ROAD | 06/3/15 1300 |



**Administrative Driver's License Revocation Office ("ADLRO")**
2875 South King Street, Suite 101, Honolulu, Hawai'i 96826-3564
Telephone: (808) 534-6800 • Fax: (808) 534-6888
Toll Free Numbers: 1-866-826-5656

## SWORN STATEMENTS RE: BLOOD TEST FOR ALCOHOL RELATED OFFENSE

(PLEASE FORWARD COMPLETED COPY TO ADLRO)

Respondent's Name: _BRYCE CARTER_    Date of Arrest: _5-31-15_

Last Four Digits of SSN #: _____    Arrest Report #: _15 - 213534_

*The following to be filled out by the Person Withdrawing Blood Sample:*

I, _____ _Perry_ , _Med Tech_ , swear that the following is true and correct:
   (print name clearly)       (print title clearly)

Blood samples were drawn from the Respondent named above on _5/31/15_ _0730_ at _DLS Kentaminat_ ;
                                            (date & time)      (location)

utilizing a procedure in conformance with the State of Hawai'i Department of Health according to Title 11, Chapter 114, Hawai'i Administrative Rules. I am qualified to draw blood under HRS §291E-12.

_[signature]_                              _5/31/15_

Signature of Person Withdrawing Blood Sample           Date

*The following to be filled out by Blood Test Analyst:*

I, _____ _Perry_ , _Med Tech_ swear that the following is true and correct:
   (print name clearly)       (print title clearly)

Pursuant to HRS §321-161 and the rules adopted thereunder:

1.   I was trained and, at the time of the Respondent's alcohol concentration test, was certified and capable of operating and/or maintaining the testing equipment used on the Respondent.

2.   I followed the established procedures which were approved by the State of Hawai'i Department of Health for conducting the alcohol concentration test on the Respondent.

3.   The testing equipment used to conduct the alcohol concentration test on the Respondent functioned in accordance with the operating procedures, and the Respondent's test result indicated an alcohol concentration of _0.19_ .

4.   The person whose blood was tested was the person arrested, the Respondent.

5.   The equipment used to conduct the test was approved for use as an alcohol testing device in this State. The testing equipment was properly maintained and was in good working condition when the Respondent's test was conducted.

_[signature]_                              _6/3/15_

Signature of Blood Test Analyst             Date

**PAGE 1 OF 4**



**Administrative Driver's License Revocation Office ("ADLRO")**
2875 South King Street, Suite 101
Honolulu, Hawai'i 96826-3564
Telephone: (808) 534-6600 / Fax: (808) 534-6888
Toll Free Number: 1-866-826-5656
Website: adlro.hawaii.gov

ARREST DATE: 5-31-15
AGENCY: HPD
REPORT NO.: 15-213534

## NOTICE OF ADMINISTRATIVE REVOCATION

RESPONDENT'S NAME: BRYCE CARTER

MAILING ADDRESS:

CITY / STATE / ZIP:

YEAR OF BIRTH: 1989

SSN (LAST 4 DIGITS ONLY):

D.L. NO.: T655191576

(STATE) VIRGINIA

## PART I.   REVOCATION OF YOUR LICENSE AND PRIVILEGES

You are the respondent in this administrative proceeding. **Pursuant to the Administrative Revocation Process, Chapter 291E, Part III, Hawai'i Revised Statutes ("HRS"), if the Administrative Driver's License Revocation Office ("ADLRO") administratively revokes your license and privileges, your license and privilege to operate a vehicle in the State of Hawai'i or on or in the waters of the State will terminate: (1) thirty days after the date this Notice of Administrative Revocation ("Notice") is issued in the case of an alcohol related offense; (2) forty-four days after the date this Notice is issued in the case of a drug related offense; or (3) at a later date as established by ADLRO under HRS §291E-38.**

1.  You were arrested for Operating a Vehicle Under the Influence of an Intoxicant in violation of HRS §291E-61 or §291E-61.5.

2.  <u>Alcohol Related Offense</u>: You ☐ consented to be tested or were informed of the sanctions of the Administrative Revocation Process and the consequences of refusing to be tested for alcohol concentration and you ☐ refused to be tested.

3.  <u>Drug Related Offense</u>: You ☐ consented to be tested or were informed of the sanctions of the Administrative Revocation Process and the consequences of refusing to be tested for drug content in the blood or urine and you ☐ refused to be tested.

## PART II.   TEMPORARY PERMIT

You must surrender your license to the arresting officer who will then issue you a Temporary Permit. The Temporary Permit allows you to operate a vehicle for thirty days in the case of an alcohol related offense and forty-four days in the case of a drug related offense or until such time as the director may establish pursuant to HRS §291E-38. The Temporary Permit is subject to the same restrictions as your license and you must have it in your possession at all times when operating a vehicle during the period for which it is valid. **A Temporary Permit will not be issued to you if you are unlicensed, your license is expired, your license is suspended or revoked, or you do not have your license in your possession.**

☐ This **IS** a Temporary Permit

☐ Your license is forwarded to ADLRO

☒ This **IS NOT** a Temporary Permit

Reason: ☐ You are unlicensed or your license is expired.
☐ Your license is suspended/revoked.
☒ No license in your possession.

| FOR ADLRO USE ONLY |
|---|
|  |

DR-P-032          ORIGINAL–ADLRO     COPY–RESPONDENT     COPY–POLICE          AD-DUI Form 01-1 (07/12)

<u>NOTICE OF ADMINISTRATIVE REVOCATION — PAGE 2 OF 4</u>

REPORT NO.: *15-213534*

## GROUNDS FOR ADMINISTRATIVE REVOCATION

You were arrested for Operating a Vehicle under the Influence of an Intoxicant in violation of HRS §291E-61 or §291E-61.5 because the arresting officer determined that there existed probable cause to believe that you operated a vehicle under the influence of an intoxicant. In this Notice, the term "license" refers to your license and privilege to operate a vehicle in the State of Hawai'i or on or in the waters of the State. If ADLRO revokes your license pursuant to Chapter 291E, Part III, HRS ("Administrative Revocation Process"), your license will be revoked for the following periods:

| Offense Means Alcohol Enforcement Contact or Drug Enforcement Contact | You Took a Breath or Blood Test And, If Applicable, a Blood or Urine Test | You Refused to Be Tested |
|---|---|---|
| **First Offense Within Five Years** | ONE YEAR | TWO YEARS |
| **Second Offense Within Five Years** | EIGHTEEN MONTHS | THREE YEARS |
| **Third Offense Within Five Years** | TWO YEARS | FOUR YEARS |
| **Fourth Offense or More Within Ten Years** | FIVE YEARS UP TO TEN YEARS | TEN YEARS |

If you are under the age of eighteen, you shall be prohibited from driving during the period preceding your eighteenth birthday and shall thereafter be subject to the ignition interlock requirement of HRS §291E-41(b) for the balance of the revocation period. Your license shall not be restored under any circumstances during the administrative revocation period except as provided in §291E-44.5 [Ignition Interlock Permits; Driving for Employment].

If ADLRO revokes your license pursuant to the Administrative Revocation Process, you shall be referred to the driver's education program for an assessment, by a certified substance abuse counselor, of your substance abuse or dependence and the need for treatment. You are responsible for all costs for the assessment and treatment. Your license will not be restored upon the expiration of the revocation period. You must apply for a new license or renew your privilege to operate a vehicle after proving that you have complied with the conditions of the administrative revocation imposed by ADLRO. You must successfully complete each requirement for obtaining a new license or renewing your privilege to operate a vessel in the State of Hawai'i including payment of all applicable fees.

## INFORMATION ABOUT REVOCATION PROCEDURES

**Administrative Review**

1.    ADLRO will automatically conduct an administrative review of the issuance of this Notice without any request from you.

2.    You may submit written information demonstrating why your license should not be administratively revoked within three days of the issuance of this Notice in the case of an alcohol related offense and within seventeen days of the issuance of this Notice in the case of a drug related offense.

3.    All written information shall be submitted to ADLRO.

4.    You are not entitled to be present or represented at the administrative review.

5.    The administrative review decision shall be mailed to you: (a) No later than eight days after the date of the issuance of this Notice in the case of an alcohol related offense; and (b) No later than twenty-two days after the date of the issuance of this Notice in the case of a drug related offense.

6.    If your license is not administratively revoked after the administrative review, your driver's license shall be returned to you, unless a subsequent alcohol or drug enforcement contact has occurred, along with a certified statement that the administrative revocation proceedings have been terminated.

<u>NOTICE OF ADMINISTRATIVE REVOCATION — PAGE 3 OF 4</u>

REPORT NO.: 15- 213534

**Administrative Review (cont.)**

7.    If your license is administratively revoked after the review, a decision shall be mailed to you or to your parent or guardian if you are under the age of eighteen that contains the following information:

    a.    The reasons why your license was administratively revoked;

    b.    That you may request ADLRO to schedule an administrative hearing to review the administrative revocation within six days of the date the decision is mailed;

    c.    That if your request for an administrative hearing is received by ADLRO within six days of the date the decision was mailed, the hearing shall be scheduled to commence: (i) No later than twenty-five days after the date of the issuance of this Notice in the case of an alcohol related offense; and (ii) No later than thirty-nine days after the date of the issuance of this Notice in the case of a drug related offense;

    d.    The procedure to request an administrative hearing;

    e.    That failure to request an administrative hearing within the time provided shall cause the administrative revocation to take effect for the period and under the conditions established by ADLRO in the decision;

    f.    That you may regain the right to a hearing by requesting ADLRO to schedule a hearing within sixty days after the issuance of this Notice;

    g.    That ADLRO shall schedule the hearing to commence no later than thirty days after a request under the immediately preceding paragraph is received, but that, except as provided in HRS §291E-38(j), the temporary permit shall not be extended if you fail to request an administrative hearing within the initial six-day period provided for that purpose;

    h.    That your failure to attend the hearing shall cause the administrative revocation to take effect for the period and under the conditions indicated; and

    i.    The duration of the administrative revocation and other conditions that may be imposed.

8.    If you had a valid license at the time of the arrest and your license is administratively revoked after the review, you must obtain an ignition interlock permit in order to operate a vehicle equipped with an ignition interlock device during the revocation period.

**Administrative Hearings**

1.    You shall have six days from the date the administrative review decision was mailed to request that an administrative hearing be scheduled (see numbered paragraph seven under Administrative Review, above).

2.    A request for an administrative hearing and payment of a $30 fee, unless waived pursuant to HRS §291E-39 [Fees and costs], shall entitle you to review and copy, prior to the hearing, all documents that were considered at the administrative review, including the arrest report and the sworn statements.

3.    You may be represented by an attorney, submit evidence, give testimony, and present and cross-examine witnesses.

4.    If you are under the age of eighteen, a parent or guardian must be present.

5.    A written decision shall be mailed to you no later than five days after completion of the hearing.

6.    If the administrative revocation is reversed after the hearing, your driver's license shall be returned to you, along with a certified statement that the administrative revocation proceedings have been terminated.

7.    If the administrative revocation is sustained at the hearing, a written decision shall be mailed to you, or to your parent or guardian if you are under the age of eighteen, that shall contain, at a minimum, the following information:

    a.    The effective date of the administrative revocation;

    b.    The duration of the administrative revocation;

    c.    Other conditions that may be imposed by law; and

    d.    The right to obtain judicial review.

8.    If you, or your parent or guardian if you are under the age of eighteen, fail to attend a scheduled hearing, the administrative revocation shall take effect as provided in the administrative review decision.

NOTICE OF ADMINISTRATIVE REVOCATION — PAGE 4 OF 4

REPORT NO.:  15-213534

## CRIMINAL PROSECUTION

The administrative revocation process is a civil administrative proceeding that is separate and distinct from criminal prosecution. Criminal charges filed pursuant to HRS §291E-61 or §291E-61.5 may be prosecuted concurrently with the administrative proceeding. If convicted, your license will be revoked, you will be required to attend a substance abuse rehabilitation program, and you may have to pay a fine, perform community service, and/or serve a prison term. Documentary and testimonial evidence that you provide during the administrative proceeding shall not be admissible against you in any proceeding under HRS §291E-61 or §291E-61.5 arising out of the same occurrence, however, evidence from the administrative revocation proceeding is available to the prosecuting attorney. If your license is administratively revoked under the Administrative Revocation Process and you are also convicted of an offense under HRS §291E-61 or §291E-61.5 arising out of the same occurrence, the total period of revocation imposed in the two proceedings shall not exceed the longer period of revocation imposed in either proceeding. If you are convicted under HRS §291E-61 or §291E-61.5 prior to completion of the administrative proceedings, you shall surrender the temporary permit issued under the Administrative Revocation Process at the time of entry of a plea of guilty or no contest, entry of a verdict of guilty, or of sentencing, whichever occurs first.

**I SWEAR OR AFFIRM THAT PAGES 1 TO 4 OF THIS NOTICE WERE ISSUED TO THE RESPONDENT ON THE DATE, TIME, AND LOCATION PROVIDED HEREIN.**

| BORGES 102994 | HPD MAIN | 5-31-15 |
|---|---|---|
| Arresting Officer / I.D. No. | Location | Issue Date/Time |

**BY SIGNING BELOW, THE RESPONDENT ACKNOWLEDGES RECEIPT OF PAGES 1 TO 4 OF THIS NOTICE.**

Respondent's Signature                           31 MAY 15
                                                    Date

## CERTIFIED STATEMENT OF DISMISSAL

☐  This certifies that the administrative revocation proceeding against you has been terminated with prejudice and that your driver's license has been returned to you: (1) because your alcohol concentration test result was less than .08 if your case involved an alcohol related offense; or (2) because your blood or urine test failed to show the presence of any drug that is capable of impairing your ability to operate a vehicle in a careful and prudent manner if your case involved a drug related offense.

Arresting Officer                           Date

DR-P-032          ORIGINAL–ADLRO    COPY–RESPONDENT    COPY–POLICE          AD-DUI Form 01-4 (07/12)

EXHIBIT 2

*Maryland v. Carter*, No. 9T0PHF (Md. Feb. 19, 2019) Disposition

## Case Information

00000009T0PHF | The State of Maryland vs CARTER, BRYCE SPENCER

| Case Number | Court | |
|---|---|---|
| 00000009T0PHF | Rockville | |
| File Date | Case Type | Case Status |
| 05/21/2018 | Citation - Traffic | Closed |

## Party

Plaintiff
**State of Maryland**

Officer - Witness

**Address**

Officer - Witness

**Address**

Officer - Arresting/Complainant

Defendant
**CARTER, BRYCE SPENCER**

DOB
⬛1989

Gender
**Male**

Race
**Black**

Height
**6' 2"**

Weight
**210 lbs**

Drivers License
**VA T65519576**

Address
⬛

## Charge

Charges
CARTER, BRYCE SPENCER

| | Description | Citation | Statute | Level | Date |
|---|---|---|---|---|---|
| 1 | DRIVING VEH. WHILE IMPAIRED BY ALCOHOL | 00000009T0PHF | TA.21.902.B1.I | Traffic | 05/20/2018 |

## Disposition Events

02/19/2019 **Plea** ▾

Judicial Officer
Sarsfield, James B.

| 1 | DRIVING VEH. WHILE IMPAIRED BY ALCOHOL | Guilty |

02/19/2019 Disposition ▾

Judicial Officer
Sarsfield, James B.

| 1 | DRIVING VEH. WHILE IMPAIRED BY ALCOHOL | Guilty |

02/19/2019 Converted Sentence ▾

| 1 | DRIVING VEH. WHILE IMPAIRED BY ALCOHOL | Converted Sentence |

Condition - Adult

1. Report as directed and follow Supervisor's instructions, REPORT AS DIRECTED, 02/19/2019, Active 02/19/2019

2. Supervision Fee Waived, PAY P&P SUPERVISION FEE - WAIVED, 02/19/2019, Active 02/19/2019

3. Work or attend school regularly as directed, WORK OR ATTEND SCHOOL REGULARLY, 02/19/2019, Active 02/19/2019

4. Permission from Sup. before changing addr,job, leaving state, GET PERMISSION TO MOVE, LEAVE STATE ETC, 02/19/2019, Active 02/19/2019

5. Obey all laws and incur no serious motor violation, OBEY ALL LAWS; NO SERIOUS MV VIOLATIONS, 02/19/2019, Active 02/19/2019

6. Notify Supervisor if charged with criminal/jailable offense, NOTIFY SUPERVISOR IF CHARGED W/OFFENSE, 02/19/2019, Active 02/19/2019

7. Permit your Supervisor to visit your home unannounced, PERMIT SUPERVISOR TO VISIT HOME, 02/19/2019, Active 02/19/2019

8. Do not illegally possess/use/sell controlled substance, DO NOT ILLEGALLY POSSESS/SELL CDS ETC., 02/19/2019, Active 02/19/2019

9. Appear in court when notified to do so, APPEAR IN COURT WHEN NOTIFIED, 02/19/2019, Active 02/19/2019

10. Pay fines/costs/restitutions/fees as ordered by the court, PAY ALL FINES, COSTS, ETC. AS ORDERED, 02/19/2019, Active 02/19/2019

11. Refrain from driving after consuming alcohol, DO NOT DRIVE AFTER CONSUMING ALCOHOL, 02/19/2019, Active 02/19/2019

12. Enroll in, pay for, and complete treatment at ___(facility), ENROLL IN AND COMPLETE TREATMENT AT VETERAN'S ADMIN., 02/19/2019, Active 02/19/2019

13. Attend Victim Impact Panel meetings when notified, ATTEND VICTIM IMPACT PANEL MEETINGS REPORT 03/21/19 AT 06:00 PM, 02/19/2019, Active 02/19/2019

14. Have Ignition Interlock installed _ months and pay costs, HAVE INTERLOCK INSTALLED 00Y 12M 000D, 02/19/2019, Active 02/19/2019

15. Other, COND 22:MADD-UMD SHADY GROVE BLDG 3, 02/19/2019, Active 02/19/2019

16. Other, III-3241 CROCKETT THEATER,9630 GUDELSKY, 02/19/2019, Active 02/19/2019

17. Other, DR, ROCKVILLE,MD 20850 W/$50 MONEY ORDER, 02/19/2019, Active 02/19/2019

18. Other, COND 15: ANY., 02/19/2019, Active 02/19/2019

19. Other, COND 30: IF LICENSED AND AUTO AVAILABLE, 02/19/2019, Active 02/19/2019

20. Other, COND 32: REPORT TO MCDC BY 5PM ON, 02/19/2019, Active 02/19/2019

21. Other, 3/1 AND 3/8., 02/19/2019, Active 02/19/2019

Converted Disposition

```
CONFINEMENT_YRS: 00  ; CONFINEMENT_MOS: 00  ; CONFINEMENT_DAYS: 060  ; SUSP_YRS:
```

## Events and Hearings

| 08/16/2018 POSTPONEMENT OF TRIAL |
| 12/07/2018 POSTPONEMENT OF TRIAL |
| 02/19/2019 TRIAL KEYPOINT |
| 02/19/2019 Committed |
| 02/19/2019 Status Change |
| 03/01/2019 Release From Commitment |
| 03/08/2019 Appeal to Circuit Court |
| 03/08/2019 Status Change |

06/26/2019 Appeal Notice of Disposition

07/08/2019 Status Change

07/12/2019 Status Change

07/17/2019 Disposition Change

07/17/2019 Disposition Change

08/02/2019 Suspension - Failure to Pay

08/14/2019 Suspension - Recall

08/14/2019 Status Change

11/22/2019 Status Change