IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Crim. No.: 1:25PO492 |
| | ) | Hon. John F. Anderson |
| BRYCE S. CARTER, | ) | |
| Defendant. | ) | |
| | ) | |

## **DEFENDANT'S POSITION ON SENTENCING**

Comes now, Bryce Carter, by counsel, and states his position regarding sentencing.[1]  For the reasons articulated below, Mr. Carter requests that the Court impose an appropriate and reasonable sentence --  that is one which recognizes:

(a) the interplay between his mental health and the instant offense conduct;

(b) his unique history and characteristics – to include educational achievements, military service, and consistent and lucrative employment;

(c) a lengthy term of incarceration is not the only means of addressing the retributive factors of 18 U.S.C. § 3553(a)(2)(A-C); and

(d) the need to provide Mr. Carter with medical and/or correctional treatment *in the most effective manner*.

Counsel asks the Court to fashion the sentence in a manner that fosters continued rehabilitative success as it relates to his present mental health treatment regimen, sobriety; employment/financial stability; and community-based support systems.

---

[1] Mr. Carter has no objection to the PSR.

**History and Characteristics of Bryce Carter**

Mr. Carter's history is multifaceted. He was raised in a military family that consisted of both parents and his slightly older sister. His father was strict, and his physical discipline of Mr. Carter sometimes required intervention by Mr. Carter's mother. PSR ¶ 30. He described himself as an "average" student, who got along well with his peers, and played sports throughout school. He was also a member of his high school's ROTC program.

In 2011, he earned a Bachelor of Arts in Political Science - with honors - from Shaw University (NC). After completing his undergraduate degree, he entered the military. Serving in the U.S. Army from 2011-2016, he received an honor medal and multiple other ribbons and awards. (*See* PSR ¶ 45). He was relieved from his duties as an executive officer and his military career ended following his first DUI conviction in 2015. *See* PSR ¶¶ 45-46. Just one of many examples of Mr. Carter's resiliency – he was able to pivot, apply himself, and go on to earn his MBA in Human Resources in 2017.

Mr. Carter has a strong work ethic and stable employment history. He is currently employed as a Human Resources Manager for Counseling Wellness and Health. Prior to that, he was employed for four years with the Department of Homeland Security as a program manager.[2] He is in a long-term relationship with his live-in partner of eight (8) years. His partner owns the home however Mr. Carter's has been the primary income since his partner lost her job with the U.S. Department of States earlier this year.

Mr. Carter's educational, career, and personal successes are even more commendable given his history of mental health sufferings. Although he experienced multiple hospitalizations between

---

[2] He was separated from this employment following his 2021 mental health episode referenced in PSR ¶ 23.

2016 and 2021, he was not formally or specifically diagnosed until *after* a 2021 police encounter in Hanover County, Virginia.[3]  Even then, it took Mr. Carter several years more to gain access to consistent mental health providers who were able to provide a properly managed continuum of care.  Speaking candidly with the PSR writer, Mr. Carter's mother shared that Mr. Carter would "take a drink so that he would not be bothered by his feelings."  (*See* PSR ¶ 31)  "[I]t took a lot of work to get him the mental health treatment he is currently on due to the Veteran's Affairs Hospital not being consistent as far as his doctors and therapists….[H]e was seeing multiple different doctors and counselors, and it was never the same person."  She expressed optimism that his current medication and therapeutic regimen will allow him to live fully and productively.

**Legal Authority**

In *Rita v. United States,* 127 S.Ct. 2456 (2007), the Supreme Court stated that a district court should begin all sentencing proceedings by correctly calculating the applicable Guideline range.  In cases in which there is no applicable guideline, the district court looks solely to the factors listed in 18 U.S.C.  § 3553(a).  In doing so, the court must determine if they support the sentence requested by a party.  The approach to sentencing must be a comprehensive one in which the Court fashions a sentence that is sufficient but not greater than necessary to meet the requirements of 18 U.S.C. § 3553.

Congress has *required* federal courts to impose the least amount of imprisonment necessary to account for the considerations and accomplish the sentencing purposes set forth in 18 U.S.C. Section 3553(a).  These include: (a) the nature and circumstances of the offense and the history and characteristics of the

---

[3] It is worth highlighting that one month prior to the Hanover incident, Mr. Carter checked into an inpatient program in Virginia Beach, Virginia in October 2021.  (*See* PSR ¶ 36)

3

defendant; (b) the kinds of sentences available; (c) the advisory Guidelines range; (d) the need to avoid unwarranted sentencing disparities; (e) the need for restitution; and (f) the need for the sentence to reflect the following: the seriousness of the offense, promotion of respect for the law and just punishment for the offense, provision of adequate deterrence, protection of the public from future crimes and providing the defendant with needed educational or vocational training, medical care, or other correctional treatment. *See* 18 U.S.C. § 3553(a); *see also Kimbrough v. United States*, 128 S. Ct. 558, 570 (2007).    In addition, there is no limitation concerning the background, character, and conduct of a person convicted of an offense that a court may receive and consider for the purpose of imposing an appropriate sentence. 18 U.S.C. § 3661.

## ARGUMENT

Alcoholism is a recognized disease.[4] [5]    The AMA endorses the proposition that drug dependencies, including alcoholism, are diseases and that their treatment is a legitimate part of medical practice.  Likewise, and as this court is fully aware, treatment is also a legitimate part of the rehabilitative process for every defendant who struggles with sobriety.  Mr. Carter has been engaged in outpatient substance abuse treatment since March of this year.  Between March and July 2025, he completed a total of twenty-six (26) hours of state-certified alcohol and drug treatment through Ryan Rehabilitation Behavioral Health Treatment.  Moreover, continued

---

[4] In 1956, The American Medical Association (AMA) declared alcoholism as an illness.  In 1991, The AMA further endorsed the dual classification of alcoholism by the Internal Classification of Diseases under both psychiatric and medical sections.  Volunteers of America Southwest, *Is Alcoholism a Disease or a Choice?* Available at:  https://www.voasw.org/is-alcoholism-a-disease-or-a-choice/#:~:text=Alcoholism%20has%20been%20categorized%20as,be%20truly%20accepted%20as%20disorders. (Last visited October 3, 2025).

[5] In 2004, the World Health Organization declared that dependence is as much a disorder of the brain as any other neurological or psychiatric illness.  World Health Organization, "Neuroscience of psychoactive substance use and dependence, 2004."  Available online at www.who.int/substance_abuse/publications/en/Neuroscience.pdf.

4

substance abuse counseling can be mandated by the Court and is available through the VA Hospital, Alcoholics Anonymous, or a similar secular program.

Mr. Carter's history of substance abuse and mental health issues are completely interconnected. He continues to receive services through the Veteran's Affairs Administration; however he has had the same treating physician for at least six (6) months now and his co-occurring disorders are finally being treated properly. He is administered a monthly injectable which ensures that he receives the appropriate medication in the appropriate dosage. Each of Mr. Carter's judicial encounters have been connected and or attributable to his mental health or substance dependence. His substance abuse and mental health are now stable, drastically reducing the risk of recidivism.

**Analysis pursuant to 18 U.S.C. § 3553(a)**

*Nature of the Offense*

On January 5, 2025, Bryce Carter self-admitted to the psychiatric unit at Medstar Health in Clinton, Maryland. (PSR ¶ 35). During his hospitalization, he was administered medication that differed from that which he had been prescribed previously by physicians at the VA Hospital. At discharge, he was sent home with the same medication and directed to continue its use. Following his hospitalization, Mr. Carter also continued to receive medication and outpatient care at the VA Hospital. Unaware of the negative interaction between the medication prescribed at discharge and the ongoing prescription written by VA doctors, Mr. Carter took both medications for several weeks. His mental health decompensated significantly, culminating in the instant offense.

On February 27, 2025, United States Park Police responded to a report of a drunken motorist, later identified as Mr. Carter, on the roadway who was attempting to get an Uber ride

away from the area. PSR ¶ 10. Upon contacting Mr. Carter, officers observed what they described as an emanating odor of alcohol and mouthwash. Officer's recovered a bottle of whiskey, mouthwash, and multiple bottles of prescription medication from Mr. Carter's vehicle. *Id*. Mr. Carter's behavior during processing was far from model, but he was not violent and the officers, as a courtesy, actually transported him safely to his home in Oxon Hill, Maryland at the conclusion of processing.

*Retribution, Deterrence, Incapacitation, Rehabilitation*

The remaining sentencing factors under 18 U.S.C. § 3553(a) essentially address punishment, deterrence, and treatment. Therefore, the appropriate inquiry in determining the sentence in this case is whether the sentence requested is sufficient *enough* to punish Mr. Carter, to deter him and others from criminal behavior, to protect the public, and to afford adequate correctional treatment. In weighing these factors, the court can and should consider empirical data and several studies which show that:

A. Longer sentences offer little to no benefit in deterring crime.

    1. Increasing the severity of punishment does little to deter crime. National Institute of Justice, *Five Things About Deterrence*, (July 2014);[6]

    2. Increases in severity of punishments do not yield significant (if any) marginal deterrent effects. Michael Tonry, *Purposes and Functions of Sentencing*, 34 Crime and Justice 1, 28-29 (2006);

    3. Empirical data does not support the view that longer sentences actually promote specific or general deterrence. Sarah French Russell, *Rethinking Recidivist*

---

[6] Available at www.ncjrs.gov/pdffiles1/nij/247350.pdf

*Enhancements: The Role of Prior Drug Convictions in Federal Sentencing*, 43 U.C. Davis L. Rev. 1135, 1187 (2010);

B. Lengthy imprisonment can actually increase recidivism by disrupting employment, reducing prospects of future employment, weakening family ties, and exposing less serious offenders to more serious offenders.

1. "Imprisonment causes harm to prisoners," isolating them from families and friends, making it difficult to successfully reenter society, and "reinfor[cing] criminal identities" through contacts with other criminals. Lynne Vieratitis et al., *The Criminogenic Effects of Imprisonment: Evidence from State Panel Data* 1974-2002, 6 Criminology & Pub. Pol'y 589, 591-93 (2007);

2. Imprisonment has criminogenic effects including "contact with more serious offenders, disruption of legal employment, and weakening of family ties." U.S. Sentencing Commission, *Staff Discussion Paper, Sentencing Options Under the Guidelines* 18-19 (Nov. 1996);[7]

3. The persistent removal of people from the community to prison and their eventual return has a destabilizing effect that has been demonstrated to fray family and community bonds and contribute to an increase in recidivism and future criminality. The Sentencing Project, *Incarceration and Crime: A Complex Relationship*, 7-8 (2008).

These and other recidivist studies show that lengthy prison terms are often ineffective in deterring crime and are sometimes more detrimental. If the court finds that a significant period of

---

[7] Available at www.ussc.gov/Research/WorkingGroupReports/Simplifications/SENTOPT.htm

incarceration is nonetheless warranted in this case, the defense request that the court sentence Mr. Carter to a term of probation with special conditions to include (not greater than) 14 days confinement at the Alexandria Detention Center, with the balance of any term of confinement to be served via home confinement.

Probation supervision is punitive and therefore fashioning the sentence in the manner requested does not equal "a slap on the wrist." As the Supreme Court recognized in *Gall*,[8] supervision imposes a serious restriction on a person's liberty. Individuals on supervision are "subject to several standard conditions that substantially restrict their liberty." *Id.*; *see also United States v. Knights*, 534 U.S. 112, 119 (2001) ("Inherent in the very nature of probation is that probationers do not enjoy the absolute liberty to which every citizen is entitled.") (internal citation omitted). Mr. Carter will be under the watchful eye of this court and the United States Probation Office. His privilege to operate a motor vehicle can also be restricted (as it has been since being placed on pretrial supervision). This additional measure will further protect the community and act as a constant reminder to Mr. Carter of the dangers and consequences of driving after consuming alcohol. Finally, the prospect of additional imprisonment based on a revocation should also serve to deter Mr. Carter from further criminal conduct. Thus, when determining whether a sentence greater than requested by the defense is necessary to address the sentencing factors under 18 U.S.C. § 3553(a), it is critical that all sentencing options at the discretion of this Court be considered. Coupling a term of probation with a period of imprisonment and/or home confinement is adequate to meet the statute's retributive purposes.

Not only can punishment, protection of the public, and deterrence be addressed through

---

8 *Gall v. United States*, 552 U.S. 38, 48 (2007).

8

probation, it is also the best mechanism for accomplishing appropriate rehabilitation. Congress itself has "recogniz[ed] that imprisonment is not an appropriate means of promoting correction and rehabilitation." *See* 18 U.S.C. § 3582(a). Thus, while the Bureau of Prisons has correctional and rehabilitative programs, incarceration will not serve to provide the appropriate, long-term, stabilizing rehabilitation that Mr. Carter has begun - and needs moving forward - to deter further criminal conduct. Conversely, disruption of employment, familial and community support systems, and treatment are counter-productive to growth and becoming an asset to one's community. Imposition of punishment as requested is the least intrusive manner of satisfying 3553(a)(2)(A-C); and avoids disruption of Mr. Carter's (i) community-based mental health and substance abuse treatment; (ii) employment; and (iii) financial and household stability.

## Conclusion

"It has been uniform and constant in the federal judicial tradition for a sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue." *Gall*, 552 U.S. 38, 52 (2007). For the reasons discussed herein, Mr. Carter respectfully requests that this Court sentence him to a term of probation, with special conditions to include (a) no more than 14 days confinement at the Alexandria Detention Center, (b) home confinement – if the Court

deems additional punishment necessary; (c) continued mental health counseling and treatment –
including medication compliance; and (d) continued substance abuse counseling via Alcoholics
Anonymous (or similar secular program).

Respectfully Submitted,
BRYCE S. CARTER

By:     _____/s/_____
             Counsel
Valencia Roberts, Esquire
VA Bar No. 44999
Assistant Federal Public Defender
Counsel for Bryce Carter
1650 King Street, Suite 500
Alexandria, VA 22314
(703) 600-0870
(703) 600-0880 (fax)
valencia_roberts@fd.org

10